IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MICHAELA STROUD**                                                                         **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO.:** 3:23-cv-330-CWR-FKB

**WAL-MART ASSOCIATES, INC.**                                                    **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** Plaintiff, Michaela Stroud, by and through counsel, Watson & Norris, PLLC, brings this action against Wal-Mart Associates, Inc., to recover damages for violations of her rights pursuant to the Family and Medical Leave Act of 1993, as amended, for retaliation, pursuant to Title VII for race, sex and pregnancy discrimination and pursuant to 42 U.S.C. §1981 for race discrimination. In support of this cause, Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1. Plaintiff, Michaela Stroud, is an adult female resident of Scott County, Mississippi. Plaintiff is an eligible employee as currently defined by the FMLA.

2. Defendant, Wal-Mart Associates, Inc., is a Delaware corporation licensed to do business in the State of Mississippi that may be served with process by serving its registered agent: C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. The Defendant is a covered employer as currently defined by the FMLA.

**JURISDICTION AND VENUE**

3. This action arises under the Family and Medical Leave Act of 1993, as amended, Title VII and 42 U.S.C. § 1981.

4. This Court has federal question jurisdiction for actions that arise under the FMLA, Title VII and 42 U.S.C. § 1981.

5. This Court has civil rights jurisdiction for actions that arise under Title VII and 42 U.S.C. § 1981.

6. This Court has personal and subject matter jurisdiction over the Defendant and venue is proper in this Court.

7. Plaintiff timely filed a Charge of Discrimination with the EEOC on September 9, 2022, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on May 2, 2023, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Dismissal and Notice of Rights.

## STATEMENT OF FACTS

8. Plaintiff is a 29-year-old female resident of Scott County, Mississippi.

9. Plaintiff was hired on March 12, 2019, as a Cashier/Self Check Out Host at Wal-Mart Associates, Inc.

10. On May 24, 2022, Plaintiff discovered that she was pregnant.

11. On May 27, 2022, Plaintiff notified Team Lead Lindsey Cupit that she (Plaintiff) was pregnant.

12. On May 31, 2022, Plaintiff called out of work so she could attend a prenatal appointment with her medical providers, Dr. Randall Hines and Dr. Marty Gebhart, at the Mississippi Reproductive Medicine clinic in Flowood.

13. On June 15 and 16, 2022, Plaintiff called in to work due to morning sickness.

14. According to Walmart's Authorized Call Out policy, a pregnant employee may call out under pregnancy related absence, whether it be for inability to work due to

2

pregnancy, or for prenatal/appointments.

15. For this reason, Plaintiff did not think she needed to worry about accumulating points due to these absences.

16. On June 18, 2022, Ms. Cupit messaged Plaintiff to inform her that she had accumulated three points due to her recent absences.

17. Ms. Cupit further instructed Plaintiff that according to Front End Coach Constance Shelton (black female), Plaintiff needed to apply for intermittent FMLA leave through Sedgwick to call out for pregnancy-related leave.

18. On June 18, 2022, Plaintiff complied with this instruction.

19. Plaintiff applied for intermittent FMLA leave.

20. On June 20, 2022, Plaintiff called out for a pre-natal medical appointment.

21. Sadly, during that appointment, Plaintiff found out her baby was suffering significant complications.

22. Plaintiff called out on June 21, 2022, as well.

23. On June 24, 2022, Plaintiff called Sedgwick and requested that the due date be extended past June 30, 2022, because at that point her medical providers had still not received documentation from Sedgwick.

24. On June 26, 2022, Plaintiff discovered that effective June 21, 2022, Sedgwick denied her intermittent FMLA leave allegedly due to the fact she had not worked enough hours during the previous year.

25. Plaintiff then called Sedgwick and asked what she could do since Sedgwick had denied her request for intermittent FMLA leave.

26. Plaintiff was referred to speak with the Accommodations department.

27. The Accommodations department opened a new case for Plaintiff and

addressed the dates that she had called out of work.

28. Plaintiff notified Ms. Cupit about her Accommodations case.

29. On June 28, 2022, Plaintiff went to another prenatal medical appointment, a ultrasound was performed and unfortunately no heartbeat was detected.

30. Dr. Gebhart gave Plaintiff medication to help expedite the miscarriage process.

31. On June 28, 2022, Plaintiff informed Ms. Cupit that she (Plaintiff) needed to take a brief leave of absence from June 28 to July 5, 2022, so that she could complete the miscarriage process.

32. Plaintiff also submitted a request for this leave time to Sedgwick, and she was eventually approved for the time off.

33. On July 5, 2022, Ms. Cupit telephoned Plaintiff.

34. Ms. Cupit warned Plaintiff that Ms. Shelton had stated to Ms. Cupit, "When Michaela comes in [July 6, 2022], terminate her out of the system."

35. On July 8, 2022, Plaintiff returned to work.

36. On July 12, 2022, Ms. Shelton called Plaintiff into her office and berated her about why she had taken a leave of absence on June 28th.

37. When Plaintiff explained the situation to Ms. Shelton, Ms. Shelton responded, "Again?"

38. Ms. Shelton responded this way because Plaintiff had miscarried previously in June 2021.

39. Yet, Ms. Shelton, far from showing compassion, seemed irritated by the situation.

40. Plaintiff tried to appeal to Ms. Shelton and refer to Wal-Mart's Authorized

Call Out policy for pregnant employees, but Ms. Shelton refused to listen and instead kept insisting that Plaintiff had "an attendance problem."

41. Plaintiff contends her absences were related to either a time in April 2022, when she had the flu (and her time off was approved), or from her pre-natal medical appointments (which should have been excused according to Wal-Mart's policy).

42. On July 12, 2022, Plaintiff was terminated, allegedly due to absenteeism and having pointed out.

43. Plaintiff contends that Wal-Mart failed to reasonably accommodate her by pointing her for the pregnancy-related absences.

44. After she was terminated, Plaintiff contacted another employee of Wal-Mart, Jicuria Bobbitt (black female) by text.

45. Ms. Bobbitt had been pregnant while employed at Wal-Mart and delivered her baby in May 2022.

46. Plaintiff asked Ms. Bobbitt if she (Ms. Bobbitt) was required to get intermittent FMLA leave from Sedgwick, but Ms. Bobbitt said she had not.

47. Moreover, Ms. Bobbitt stated, "I just called out under pregnancy and the coach took off any points".

48. On September 9, 2022, Plaintiff filed an EEOC Charge of Sex (Pregnancy) Discrimination and Race Discrimination against Wal-Mart.

49. On December 19, 2022, in response to Plaintiff's Charge, Wal-Mart submitted a Position Statement to the EEOC.

50. Wal-Mart's Position Statement alleges that Ms. Shelton "mistakenly terminated [Plaintiff on July 12, 2022] while [Plaintiff] had a pending LOA request for the five days of reported absence."

51. Plaintiff contends, as the Wal-Mart Position Statement itself states, that on June 29, 2022, she applied with Sedgwick for "an intermittent LOA accommodation for the five days [May 31, June 15,16, 20, 21] and Sedgwick advised the store on June 29th of this request."

52. Clearly, therefore, the fact that Plaintiff had requested this LOA was known to Wal-Mart management 14 days before she was terminated.

53. It strains logic to imagine that Ms. Shelton was unable to learn this information during that time.

54. Moreover, as stated above, on or around July 5, 2022, when Ms. Cupit phoned Plaintiff to tell her (Plaintiff) that Ms. Shelton had stated to Ms. Cupit, "When Michaela comes in [July 6, 2022], terminate her out of the system." It is further notable that at that time, Ms. Cupit told Plaintiff, "I believe [Ms. Shelton] is out to get you."

55. Wal-Mart's Position Statement alleges that on July 12, 2022, "Ms. Shelton expressed concerns to Plaintiff regarding the five days of unexcused absences. Plaintiff did not tell Ms. Shelton that she had also submitted a separate intermittent LOA accommodation request for these five days related to her pregnancy. Without this knowledge, Ms. Shelton terminated Plaintiff's employment on July 12, 2022, for absenteeism and pointing out resulting from the five days of absence from work."

56. It is hard to imagine why, on July 12, 2022, if Ms. Shelton expressed concern about Plaintiff's five days of unexcused absences, Plaintiff did not explain she had submitted a separate intermittent LOA accommodation request for those five days on June 29, 2022.

57. This is hard to imagine because it is a false allegation.

58. Plaintiff contends that during her meeting with Ms. Shelton on July 12, 2022,

6

she (Plaintiff) explained that she had requested an intermittent LOA accommodation request to address the five points [one for each of the five days] that had been accumulated.

59. In response, Ms. Shelton stated, "Accommodations don't have anything to do with points." Plaintiff continued to try to explain this to Ms. Shelton, but Ms. Shelton refused to listen to reason.

60. It is also noteworthy that Ms. Cupit was also aware of the LOA accommodation request that had been made to Sedgwick for the five days and was pending approval at that point.

61. Wal-Mart's Position Statement alleges that "As of July 12th, Sedgwick had not received any medical certification to support the intermittent LOA request and, when following up on the LOA claim certification for the five days, determined Plaintiff's employment with Walmart had been terminated and, therefore, closed the matter administratively."

62. Plaintiff adamantly contends this allegation is false.

63. Plaintiff contends that on July 6, 2022, she called the Sedgwick Accommodation Service Center and informed them that her medical provider still had received no documentation, i.e., to complete to substantiate her pregnancy-related absences on the five days.

64. The Sedgwick representative assured Plaintiff that she would send the necessary documentation to the Examiner responsible for Plaintiff's case, who would then send it to Plaintiff's medical provider to be completed and returned.

65. On July 12, 2022, Plaintiff received a text from Sedgwick stating that they still had not received medical documentation from Plaintiff's medical provider.

66. The text message stated, "Please follow-up with [the medical provider] to make sure we get your info by 07/19/2022."

67. On July 13, 2022, Plaintiff called Sedgwick.

68. Plaintiff reminded the Sedgwick representative that as recently as July 6th, the documentation for her medical provider to complete still had not been sent by Sedgwick to the medical provider.

69. After a few minutes, the representative stated, "I've found it [i.e., the documentation that needed to be sent to Plaintiff's medical provider], and I'll give it to the examiner".

70. Thus, as late as July 13, 2022, Sedgwick had still not sent documentation to Plaintiff's medical provider related to the request for LOA accommodation she made on June 30, 2022, for the five days (May 31, June 15, 16, 20, 21).

71. Later that same day, Plaintiff received an email from Sedgwick stating that they received word from Wal-Mart that she was terminated so they closed her case.

72. Plaintiff maintains, as she put in her EEOC Charge, that whereas Ms. Shelton required Plaintiff to request intermittent leave from Sedgwick for her pregnancy-related absences, Ms. Shelton did not require Ms. Bobbitt to request intermittent leave from Sedgwick but allowed Ms. Bobbitt to call out for pregnancy related absences and Ms. Shelton removed any points that accumulated for those absences.

73. By contrast, Ms. Shelton understood that the five days in question were for pregnancy-related absences, but she refused to correct Plaintiff's points and even substantiated Plaintiff's termination with them, whereas she had corrected the points for Ms. Bobbitt.

74. While Ms. Bobbitt may have been required to applied for FMLA leave with

8

Sedgwick, the FMLA leave was only used to cover the maternity leave Ms. Bobbitt took after she had her baby, not for the absences she had prior to delivery, i.e., the pre-delivery absences were merely considered pregnancy-related, and Ms. Shelton voided any points Ms. Bobbitt accumulated from those absences.

75. Wal-Mart's Position Statement alleges that on August 8th, Store Manager Precious Moore informed Plaintiff that Walmart was reinstating her employment "because on July 12th she had a pending LOA request for the five days."

76. Given the discrimination Plaintiff had suffered at that point, due to both her pregnancy and to her race, she was understandably frustrated and worried that she would continue to be discriminated against or retaliated against.

77. In response to Ms. Moore, Plaintiff stated that she wanted to think about it.

78. After that, Plaintiff did not hear anything more from Wal-Mart until she was contacted on August 17, 2022, by Team Lead Erica Pickens.

79. At that time, Plaintiff informed Ms. Pickens that considering the intolerable and egregious discrimination she had previously faced due to her pregnancy and her race, she considered herself constructively discharged and unable to return to that work environment.

**CAUSES OF ACTION**

**COUNT I:  VIOLATION OF THE FMLA - RETALIATION**

80. Plaintiff incorporates by reference all preceding facts as set forth in Paragraphs 1 through 79.

81. It is unlawful for any employer to discharge or discriminate against any individual for opposing any practice made unlawful by the FMLA.

82. As a result of Defendant's retaliatory acts described above, Plaintiff has

9

suffered and continues to suffer significant lost pay and benefits.

83. The willful conduct of Defendant is evidenced by a consciously indifferent attitude towards employee's rights under the FMLA and its subsequent retaliation against Plaintiff. As a result of this conduct, liquidated damages should be assessed against Defendant.

84. Plaintiff also seeks all other relief, at law or in equity, to which she may show himself justly entitled.

### COUNT II: VIOLATION OF TITLE VII – RACE DISCRIMINATION

85. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 84 above as if fully incorporated herein.

86. Defendant has discriminated against Plaintiff because of her race based on the facts identified above which constitutes a violation of the Title VII.

87. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep, humiliation, axiety and emotional distress.

88. The unlawful actions of Defendant complained of above were intentional malicious, and taken in reckless disregard of the statutory rights of Plaintiff, thus giving rise to both compensatory and puntive damages pursuant to Title VII.

### COUNT III: VIOLATION OF 42 U.S.C § 1981 – RACE DISCRIMINATION

89. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 88 above as if fully incorporated herein.

90. Defendant has discriminated against Plaintiff because of her race based on the facts identified above which constitutes a violation of 42 U.S.C. § 1981.

91. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep, humiliation, axiety and emotional distress.

92. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff, thus giving rise to both compensatory and punitive damages pursuant to 42 U.S.C. §1981.

**COUNT IV: VIOLATION OF TITLE VII – SEX AND PREGNANCY DISCRIMINATION**

93. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 92 above as if fully incorporated herein.

94. Defendant has discriminated against Plaintiff because of her sex, female, and pregnancy based on the facts identified above which constitutes a violation of Title VII. Plaintiff is a member of a protected class, female, and she was pregnant.

95. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep, humiliation, axiety and emotional distress.

96. The unlawful actions of Defendant complained of above were intentional malicious, and taken in reckless disregard of the statutory rights of Plaintiff, thus giving rise to both compensatory and puntive damages pursuant to Title VII.

**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the Court cause service to issue in this cause upon the Defendant and that this matter be set for trial. Upon trial by jury thereon, Plaintiff prays that the following relief be granted:

1. Back wages;
2. Reinstatement or front pay in lieu of reinstatement;
3. Lost benefits and other pecuniary losses;
4. Liquidated damages;
5. Compensatory damages;
6. Punitive damages;
7. A tax gross-up and all make whole relief;
8. All costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorney's fees allowed under the FMLA, Title VII and 42 U.S.C. § 1981; and
9. Such further relief as is deemed just and proper.

THIS the 24th day of May 2023.

                                      Respectfully submitted,

                                      MICHAELA STROUD, PLAINTIFF

                            By: /s Louis H. Watson, Jr.
                                 LOUIS H. WATSON, JR.  (MB# 9053)
                                 NICK NORRIS (MB# 101574)
                                 Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, Mississippi 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@watsonnorris.com
nick@watsonnorris.com